STATE OF NORTH CAROLINA v. WILLIAM SIDNEY ALBERT, MICHAEL STEPHEN DEAREN, DORIS MANGUM MILLS

No. 524A83

(Filed 8 January 1985)

**1. Criminal Law §§ 75, 84— revocation of plea arrangement—confession not involuntary—testimony not fruit of poisonous tree**

Defendant's statement given as a result of a plea arrangement was not involuntary because the plea arrangement was subsequently revoked when defendant violated a condition thereof where defendant was at all times represented by counsel, was fully advised of his rights, and was not coerced or induced into making the statement. Therefore, even if a portion of the testimony of defendant's daughter was based on information taken from defendant's statement, such testimony was not inadmissible as "fruit of the poisonous tree."

**2. Criminal Law § 114.2— instruction on witness as accomplice—no expression of opinion**

The trial court's instruction that the evidence tended to show that a witness "was an accomplice in the commission of these crimes that are charged" did not constitute an expression of opinion that the crimes had, in fact, been committed.

**3. Criminal Law § 92.5— failure to renew motion for severance**

Failure to renew a motion for severance as required by G.S. 15A-927(a)(2) waived any right to severance, and review was limited to whether the trial court abused its discretion in ordering joinder at the time of the trial court's decision.

**4. Criminal Law § 92.1— consolidation of charges against three defendants**

The trial court did not abuse its discretion in allowing consolidation and joinder of murder and attempted armed robbery charges against three defendants where the State's motion for joinder was based on the theory that all three defendants formed a scheme to murder the victim and steal his money. G.S. 15A-926(a).

**5. Criminal Law § 113.7— charge on aiding and abetting**

The trial court's instruction that in order to find the two codefendants guilty of aiding and abetting an attempted armed robbery and a second-degree murder, the jury must first find that the armed robbery was in fact attempted and the murder was committed by defendant properly conformed to the evidence as presented, and the court did not commit plain error in failing to instruct that the codefendants could be convicted if the jury found that defendant "or some other person" was the perpetrator of the crimes.

**6. Criminal Law § 101.4— jury examination of documents containing markings**

Defendant failed to show that the trial court abused its discretion in permitting the jury to examine certain documents because they contained mark-

ings or underlining where the record did not indicate what markings appeared on the documents, the jury was instructed to ignore underlining on one document, and the court fully complied with the procedures set forth in G.S. 15A-1233(a).

**7. Arrest and Bail § 9.1— breach of condition of bail bond—revocation of bond**

Defendant's violation of a condition of her release on bond that she have no contact with a male codefendant was a legitimate reason for the trial court's exercise of its discretion to revoke her bond. G.S. 15A-534(f).

**8. Homicide § 12— propriety of murder indictment**

A murder indictment in the form prescribed by G.S. 15-144 was proper although it alleged both a capital and a non-capital offense and thereby failed to inform defendant of the precise charge against which she would be required to defend at trial.

**9. Conspiracy § 5.1; Criminal Law § 79— admissibility of statements by coconspirators**

There was sufficient evidence to establish the existence of a conspiracy to murder the female defendant's husband and that the female defendant was one of the conspirators, and statements of the two male codefendants made in furtherance of the conspiracy were competent evidence against the female defendant.

**10. Criminal Law §§ 69, 99.2— telephone conversation—admissibility—propriety of court's questions**

A witness was properly permitted to testify regarding a telephone conversation with the female defendant tending to show her complicity in the murder of her husband, and the trial court did not err in asking the witness questions to clarify the witness's identification of the second party to the telephone conversation.

**11. Criminal Law § 99.4— court's comments upon ruling on objections—no expression of opinion**

The trial judge did not improperly express an opinion on the quality of counsel's objections when, upon complaint by counsel that he couldn't understand a witness, he commented, "Well, no wonder, you object every time she opens her mouth. But you're entitled to make your objection," or when he remarked to counsel for two defendants who were objecting simultaneously to the witness's testimony that "when you object one time, let the witness finish her answer and then make your motion to strike." The trial judge's comments were well within his discretion in an effort to control the conduct of the trial and promote an orderly examination of the witness.

**12. Criminal Law §§ 79.1, 87.4— statement by coconspirator—opening of door by defendant—veracity of statement proper subject for redirect**

The trial court properly allowed into evidence during redirect examination a pretrial statement made by the witness implicating herself, defendant and a codefendant in a murder where defendant opened the door to evidence concerning the statement on cross-examination of the witness. Furthermore,

State v. Albert

the prosecutor's question to the witness concerning the veracity of the statement was a proper subject for redirect examination.

**13. Criminal Law § 79— acts or declarations by coconspirators**

The testimony of three witnesses, in addition to corroborating another witness's testimony, was admissible as relating to acts or declarations by conspirators in furtherance of a conspiracy to murder the female defendant's husband.

**14. Criminal Law § 138— mitigating factors—passive participant—advanced age—supporting spouse—insufficient evidence**

The trial court did not err in failing to find as factors in mitigation of the second-degree murder of defendant's husband that defendant was a passive participant, that she was a female of advanced years, and that she was the primary supporting spouse of the family since (1) the evidence did not compel a finding that defendant was a passive participant, (2) the defendant's age of fifty-three years would not support a finding in mitigation of the crime charged, and (3) the fact that defendant was the primary supporting spouse bears little relevance in mitigation of the crime charged.

**15. Criminal Law § 138— mitigating factor—no prior criminal record—necessity for finding**

The trial court erred in failing to find as a factor in mitigation of a second-degree murder that the female defendant had no record of criminal convictions where the prosecutor stipulated, in response to a question by the court as to whether any of the three defendants had a prior criminal record, that only a male codefendant had a prior criminal record.

Justice VAUGHN did not participate in the consideration or decision of this case.

BEFORE *Judge Julius A. Rousseau,* at the 16 May 1983 Criminal Session of Superior Court, GUILFORD County, each of the defendants were convicted of second degree murder and attempted armed robbery. They each appeal as a matter of right from sentences of life imprisonment for second degree murder. Their motions to bypass the Court of Appeals on fourteen year sentences of imprisonment for attempted armed robbery were allowed on December 13, 1983. Heard in the Supreme Court September 12, 1984.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Neill A. Jennings, Jr. for defendant-appellant Albert.*

*E. Raymond Alexander, Jr. for defendant-appellant Dearen.*

*John F. Comer for defendant-appellant Mills.*

MITCHELL, Justice.

On November 6, 1982 Coy Mills was murdered in front of his home in Greensboro, North Carolina. Two witnesses watched as Coy Mills and his wife Doris Mills, a defendant in this case, drove up to the house. Doris Mills was driving. She left the car and walked quickly toward the house, while the victim remained near the car. After hearing two gunshots, the witnesses watched as an assailant held a gun to the victim's head and shot a third time. One of the witnesses followed the assailant and saw him drive away in a blue Datsun.

Brenda King, the daughter of the defendant William Albert, testified at trial for the State. Her testimony tended to show that William Albert and Doris Mills had been planning to murder Coy Mills for several months. Albert first solicited the help of his daughter Beverly and her boyfriend Michael Tillman. Tillman was to arrange to have Coy Mills killed in return for which he was to receive marijuana. When Tillman refused to cooperate, Albert asked Brenda King to supply him with drugs which would put Coy Mills "to sleep." Doris Mills was present on one occasion when Brenda King gave William Albert some insecticide which contained arsenic. When the plan to poison Coy Mills failed, Albert solicited the help of Michael Dearen, Brenda King's boyfriend. King took $300.00 from the drugstore where she was working so that Dearen could buy a gun. Albert then arranged with Doris Mills to have Coy Mills home by 9:00 p.m. on the evening of the murder. Doris Mills was to delay the victim Coy Mills by having him get an item from the trunk of the car while she ran to the house. Earlier that evening, Brenda King had seen Albert and Dearen together in Albert's truck. Albert had a gun in his hands. Shortly before 9:00 p.m. Dearen left driving King's blue Datsun. At approximately 9:30 p.m., Michael Dearen returned home and informed Brenda King that Coy Mills had been shot three times. Dearen said that he was unable to get Coy Mills' money because Mills had fallen on his side. Over twelve thousand dollars was found in Coy Mills' pocket after the killing.

Brenda King was questioned shortly after the murder and denied any involvement. William Albert later agreed to testify on behalf of the State and encouraged Brenda King to tell the truth. She gave a statement in which she admitted her involvement and

implicated Albert, Dearen and Doris Mills. Charges against her were dismissed on the condition that she give truthful testimony at trial.

As a condition of a plea arrangement with Albert, he was to have no further contact with Doris Mills. Following numerous violations of this condition, the plea arrangement was withdrawn.

We will address each defendant's assignments of error separately.

### WILLIAM SIDNEY ALBERT

[1] The defendant William Albert first contends that the trial court erred in denying his motion to suppress the testimony of Brenda King and in allowing her to testify in violation of his constitutional rights. The argument is premised on the defendant's assertion that his statement, given as a result of a plea arrangement which was later revoked, must be treated as involuntary. Thus, he reasons, Brenda King's testimony, which he alleges was based upon information taken from his statement, was inadmissible as "fruit of the poisonous tree." We disagree. Even assuming *arguendo* that some portions of King's testimony reflected facts supplied by Albert's recollection of the events leading up to the murder, Albert's statement was entirely voluntary.

At the defendant's request, the trial court conducted a *voir dire* on the admissibility of Brenda King's testimony. The trial court's findings can be summarized as follows: the defendant was represented by the public defender for the Eighteenth Judicial District who advised him that he did not have to make any statement to anyone; that on behalf of the defendant, his attorney contacted the district attorney and offered to enter into a plea arrangement; that as a result of such negotiations, the defendant was to be granted immunity in return for his truthful testimony at trial and Brenda King, his daughter, would receive a suspended sentence; the defendant was at all times represented by counsel, was fully advised of his rights, and was not coerced or induced into making his statement; that the defendant subsequently violated a condition of the plea arrangement and, as a result, it was revoked. The trial court concluded that Albert's statement was voluntary and King's testimony was admissible. These findings of fact are fully supported by the evidence. Therefore, they are

binding upon this Court. *See State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984).

We are not concerned here with the admissibility of Albert's extrajudicial statement, but rather with his tenuous assertion that King's testimony was influenced in some measure by what she learned from his statement. We find nothing in the present case which would preclude King from testifying concerning facts divulged to her by Albert.

[2] The defendant Albert next contends that the trial court expressed an opinion by stating to the jury that the evidence tended to show that Brenda King "was an accomplice in the commission of these crimes that are charged." The defendant did not object to this portion of the instructions. Our review is therefore limited to determining whether "plain error" was committed. *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

We do not agree that the trial court's statement expressed an opinion that the crimes had, in fact, been committed. The trial court correctly referred to the crimes as *charged.* Furthermore, the evidence clearly tended to show that Brenda King was, in fact, an accomplice but was testifying under a grant of immunity. The statement complained of was made during the portion of the instructions dealing with the credibility of the witnesses and immediately following the statement, the trial court cautioned the jury to examine King's testimony with great care because of her involvement in the crimes charged. Under these circumstances, we find the trial court's statement was not error.

MICHAEL STEPHEN DEAREN

[3] The defendant Dearen first contends that the trial court erred by allowing the State's motion for joinder of all defendants and consolidation of the charges and by denying his motion for a separate trial. Although the defendant objected prior to trial, he did not renew his motion to sever at the close of the State's evidence or at the close of all the evidence. We held in *State v. Silva*, 304 N.C. 122, 282 S.E. 2d 449 (1981), that failure to renew a motion for severance as required by N.C.G.S. 15A-927(a)(2) waived any right to severance and that review was limited to whether the trial court abused its discretion in ordering joinder at the

time of the trial court's decision "and not with the benefit of hindsight." *Id.* at 127, 282 S.E. 2d at 453.

**[4]** N.C.G.S. 15A-926(a) provides in pertinent part that: "Two or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." In the present case the State's motion for joinder was based on the theory that the defendants William Albert, Michael Dearen and Doris Mills formed a scheme to murder Coy Mills and steal his money. Albert and Mills would then be able to develop their relationship and Michael Dearen would receive a share of the victim's money. All of the acts of the defendants the State sought to prove tended to support this theory. We find no abuse of discretion in the trial court's decision to allow consolidation and joinder.

**[5]** The defendant Dearen next contends that the trial court erred in its instruction to the jury that in order to find Dearen's codefendants guilty of aiding and abetting an attempted armed robbery and second degree murder, they must first find that the armed robbery was in fact attempted by Dearen and that he committed the murder. In the absence of objection to this instruction, we only review for "plain error."

Under the State's theory of the case, Dearen was the perpetrator while Albert and Mills aided and abetted him. Dearen first argues that he was prejudiced by the instructions as given in that they failed to inform the jury that Albert and Mills could be convicted if the jury found Dearen or *some other person* was the perpetrator of the crimes. "[T]he charge was presented in such a manner," argues the defendant, "as to lead the jury to believe that the guilt of William Albert and Doris Mills hinged *solely* on the jury's finding that appellant did the actual shooting." It is true that the instructions, as fully supported by the evidence at trial, reflected the State's theory that Dearen was the perpetrator in fact and Albert and Mills aided and abetted. In so instructing the trial court properly conformed its instructions to the evidence as presented. N.C.G.S. 15A-1232. Absent an objection or a request to the contrary, we cannot say that more was required. Certainly, there was no "plain error." *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983).

[6] The defendant Dearen's final assignment of error concerns the trial court's decision to permit the jury to examine certain exhibits pertaining to the testimony of the witness Brenda King. Pursuant to N.C.G.S. 15A-1233(a), the trial court permitted the jury to examine the following documents: a calendar King used to organize her version of the sequence of events; her November 18 statement; a later handwritten statement; and her November 13 statement in which she denied any involvement in the crimes and which she later repudiated. It is the defendant's contention that the trial court abused its discretion in granting the jury's request to review these documents because they included not only the words previously read to the jury in open court, but also markings or underlining which had been used for emphasis or notation.

The record does not indicate exactly what markings appeared on the documents. The jury was specifically instructed to ignore underlining on one of the documents. The trial court fully complied with the procedures set forth in N.C.G.S. 15A-1233(a) and, under the facts presented, the defendant has failed to meet his burden of showing that the trial court abused its discretion in permitting the jury to examine these documents. *See State v. Barnett*, 307 N.C. 608, 300 S.E. 2d 340 (1983).

### DORIS MANGUM MILLS

The defendant Doris Mills first contends that the trial court abused its discretion in allowing the State's motion for joinder. Although the defendant did move for severance prior to a *voir dire* hearing held on the admissibility of extrajudicial statements of the defendant Albert and the witness King, her motion was not renewed at the close of the State's evidence, nor at the close of all the evidence. As a result the defendant waived any right to severance, and our review is limited to whether the trial court abused its discretion as of the time it ordered joinder. *State v. Silva*, 304 N.C. 122, 282 S.E. 2d 449 (1981). For the reasons previously stated herein with regard to the defendant Dearen's similar contention, the trial court did not err when it ordered joinder.

[7] The defendant next contends that the trial court erred in allowing the State's motion to revoke her bond, in ordering that she be arrested and held without bond and by denying her motion that bond be set. We find no error.

Following her arrest on a warrant issued November 18, 1982, the defendant was released on a $20,000.00 secured bond "on the condition that she not have any contact with Bill Albert." On January 28, 1983, a detective with the Greensboro Police Department followed the defendant from her place of work to Sherwood Street where she met Albert. The two proceeded to the Ramada Inn Motel where they registered. On January 31 the district attorney made a motion to revoke the defendant's bond. The motion was allowed and the defendant was rearrested. The defendant's subsequent motion to set a new bond was denied. On February 28 the defendant filed a written motion to be released on bond citing health reasons and inability to confer with counsel. On April 5 this Court denied the defendant's petition for a Writ of Habeas Corpus.

We find nothing in the record which would indicate that the defendant's health problems were not properly treated. There is no indication that her ability to confer with counsel or prepare her defense was in any way impaired by her incarceration. Inasmuch as N.C.G.S. 15A-534(f) provides that "any judge may . . . revoke an order of pretrial release" such decisions are discretionary. The defendant's violation of a condition of her release was a legitimate reason for the trial court's exercise of its discretion to revoke her bond. This contention is without merit.

[8] The defendant argues next that the trial court erred in denying her motion to dismiss the bill of indictment for murder. The motion was grounded on the fact that the indictment alleged both a capital and a non-capital offense thereby failing to inform her of the precise charge against which she would be required to defend at trial. The indictment is in the form prescribed by N.C.G.S. 15-144. This argument is without merit. *See State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981).

[9] The defendant contends that the trial court erred in admitting as evidence against her the testimony of Brenda King concerning conversations between King and the defendants Albert and Dearen. The defendant says that the State failed to show by independent evidence the existence of a conspiracy, and therefore the declarations of Albert and Dearen were not admissible against her. We do not agree.

The testimony of one conspirator is competent and sufficient to establish the existence of a conspiracy. *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974). "When the State shows a *prima facie* conspiracy, the declarations of the coconspirators in furtherance of the common plan are competent against each of them. This is so even where the defendants are not formally charged with a criminal conspiracy." *State v. Covington*, 290 N.C. 313, 325-26, 226 S.E. 2d 629, 639 (1976) (citations omitted). It is not error for a trial court, in its discretion, to admit such declarations subject to later proof of a conspiracy. *State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1977).

In the present case there was testimony that in the late summer and early fall of 1982, the defendant Doris Mills on several occasions had given an employee of Misty's Lounge certain substances and instructed her to put them in Coy Mills' beer. The defendant and Albert at times passed love letters or notes to each other at the lounge. Brenda King testified that on at least one occasion the defendant Doris Mills was present when King gave Albert an insecticide. At that time Doris Mills asked how much insecticide she should put into the victim's drink and indicated that she wanted him dead. There was sufficient evidence to establish the existence of a conspiracy to murder Coy Mills and that Doris Mills was one of the conspirators. Therefore, the statements of Dearen and Albert made in furtherance of the conspiracy were competent evidence against Mills.

[10]   The defendant contends that the trial court erred in allowing Brenda King to testify regarding a purported telephone conversation with the defendant Mills and by examining the witness from the bench. By this testimony the State sought to prove the defendant's complicity in the murder of her husband, Coy Mills. Brenda King testified that on the evening of the murder and at the request of her father, William Albert, she telephoned Misty's Lounge and asked to speak to the defendant Doris Mills. The purpose of the telephone call was to insure that the defendant had Coy Mills home by 9:00 p.m. The witness testified that she spoke to the defendant Doris Mills. The trial court then asked the witness how she knew with whom she had talked. The witness responded, "I said, 'Doris.' and she said, 'yes.' " The witness then affirmatively answered two additional questions posed by the trial

court: "Had you ever talked to her before? Did you recognize her voice?"

Although the defendant questions the admissibility of the testimony concerning the witness's telephone conversation with her, she presents us with no argument, nor do we find any reason for its exclusion. We reject the defendant's contention that the trial court's brief interrogation of the witness constituted error. The questions were phrased in a neutral and detached manner and were intended to clarify the witness's identification of the second party to the telephone conversation. *See State v. Rinck*, 303 N.C. 551, 280 S.E. 2d 912 (1981).

[11] The defendant's next assignment of error concerns what she characterizes as the trial court's unduly prejudicial comments upon "the quality of counsel's objections." During the examination of Brenda King, defense counsel interposed numerous and frequent objections, often before the witness could begin her answer. Defense counsel complained that he could not understand what the witness was saying. The trial court responded, "Well, no wonder, you object every time she opens her mouth. But you're entitled to make your objection." The witness was then instructed that if she heard an objection, she was not to answer until the court ruled. Later, counsel for both the defendant Mills and the defendant Dearen began objecting simultaneously to the witness's testimony. The trial court stated: "We have to have some formal rulings. I understand you are entitled to make your objection and I don't object, but when you object one time, let the witness finish her answer and then make your motion to strike." We find nothing improper in the trial court's comments. They were well within its discretion in an effort to control the conduct of the trial and promote an orderly examination of the witness. *See State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983).

[12] The defendant next contends that the trial court erred in allowing into evidence Brenda King's November 18 statement implicating herself, Albert Dearen and Doris Mills in the murder of Coy Mills, and in allowing King's testimony concerning the veracity of that statement. The defendant argues that as an accomplice Brenda King could not corroborate herself and that the voluntary confession of a conspirator made after the conspiracy has ended cannot be used against a fellow conspirator.

The record discloses that it was the defendant, not the prosecution, who initiated the testimony concerning this statement on cross examination. Once the defendant had opened the door during the cross examination of the witness, the State merely introduced the entire statement during its redirect examination. The prosecutor's question to the witness concerning the veracity of the statement was a proper subject for redirect examination. We find no error.

[13] By her next assignment of error, the defendant contends that testimony of the witnesses Michael Tillman, Becky Albert Thore and Beverly Albert was improperly admitted. Tillman testified that the defendant Albert had, prior to November 6, solicited Tillman's help in an effort to secure someone to murder Coy Mills. Becky Albert Thore testified that she was present and observed Brenda King give pills to the defendant Albert and was present during conversations between Albert, King, and Tillman concerning plans to murder Coy Mills. Beverly Albert testified that she observed Brenda King give the defendant William Albert pills and was also aware, through conversations between various members of the group, of the plan to murder Coy Mills. The testimony, in addition to corroborating much of Brenda King's testimony, was admissible as it related to acts or declarations by conspirators in furtherance of a conspiracy. *See State v. Covington*, 290 N.C. 313, 226 S.E. 2d 692 (1976). We find no error.

The defendant Mills next contends, as did the defendant Albert, that the trial court erred in its charge to the jury by identifying Brenda King as "an accomplice in the commission of these crimes that are charged." As noted in our earlier discussion of this issue, we do not agree that the trial court expressed an opinion that the crimes had been committed. We find no error.

Likewise, we have previously addressed the defendant's next assignment of error pertaining to the propriety of the trial court's decision to permit the jury to examine Brenda King's statements and a calendar prepared by the witness. As discussed under the defendant Dearen's final assignment of error, the trial court fully complied with the statutory procedures which allow, at the trial court's discretion, the jury to reexamine requested materials introduced into evidence. The defendant has failed to demonstrate an abuse of discretion.

[14] The defendant's final assignment of error concerns the sentencing phase of her trial. The trial court imposed the maximum sentence of life imprisonment upon her conviction of second degree murder based on its finding of one aggravating factor—that the murder was premeditated and deliberated, and one mitigating factor—that she was a person of good character. The defendant argues that the trial court erred in failing to find two statutory mitigating factors: lack of prior criminal record, N.C.G.S. 15A-1340.4(a)(2)a; and that she was a passive participant, N.C.G.S. 15A-1340.4(a)(2)c. She further argues that the trial court erred in failing to find two non-statutory mitigating factors: that she was a female of advanced years; and that she was the primary supporting spouse of the family.

The evidence may support, but does not compel a finding that the defendant was a passive participant in the crimes. The defendant's age, fifty-three years, would not support a finding in mitigation that she was of advanced years. The fact that the defendant was the primary supporting spouse bears little relevance in mitigation of the crimes charged. Therefore, we hold that the trial court properly rejected these factors in mitigation.

[15] With respect to the defendant's contention that she was entitled to a finding in mitigation that she had no record of criminal convictions, we agree that the trial court erred in failing to find this factor. The State correctly points out that "the defendant bears the burden of persuasion on mitigating factors if he seeks a term less than the presumptive." *State v. Jones*, 309 N.C. 214, 219, 306 S.E. 2d 451, 455 (1983). The State argues that the only evidence on this factor came through an assertion by the defendant's attorney that the defendant had "no record at all in her lifetime" and had "never been in court before" except as a juror. Were this the case, we would agree that the defendant, by failing to offer testimony as to her lack of a criminal record, failed to carry her burden on this factor. However, the record discloses that the trial court inquired of the prosecutor, "Mr. Solicitor do any of them have a prior criminal record?" The prosecutor answered "only Mr. Dearen. . . ." In *State v. Jones*, we recognized that evidence is credible as a matter of law when the "nonmovant establishes proponent's case by admitting the truth of the basic facts upon which the claim of the proponent rests." *Id.* at 220, 306 S.E. 2d at 455. Inasmuch as the State appears to have

stipulated that neither the defendant Mills nor the defendant Albert had a criminal record, we hold that the trial court erred in failing to find this fact in mitigation. We remand the second degree murder case against Doris Mills to Superior Court, Guilford County, for resentencing.

Although the defendant Albert did not raise the issue of his sentence or argue it in his brief, we note that the trial court failed to find this factor in mitigation of his sentence for second degree murder. Pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, we remand the second degree murder case against Albert to Superior Court, Guilford County, for resentencing, in order to prevent a manifest injustice. *See State v. Boykin*, 307 N.C. 87, 296 S.E. 2d 258 (1982).

Albert — 83CRS15628 — no error.

Albert — 83CRS15629 — remanded for resentencing.

Dearen — 82CRS54185 — no error.

Dearen — 83CRS15534 — no error.

Mills — 82CRS54198 — remanded for resentencing.

Mills — 83CRS15533 — no error.

Justice VAUGHN did not participate in the consideration or decision of this case.